# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **BRADLEY S. SMITH, JULIE S.** | ) | |
| **MCGEE, ADAM PARKER,** | ) | |
| **SANDRA W. HALL and JACK** | ) | |
| **WHITTLE,** | ) | |
| | ) | **CIVIL ACTION NO:** |
| **Plaintiffs,** | ) | **1:14-CV-00324** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **TRIAD OF ALABAMA, LLC,** | ) | |
| **d/b/a FLOWERS HOSPITAL,** | ) | |
| | | |
| **Defendant.** | | |

## <u>MEMORANDUM BRIEF IN SUPPORT OF</u>
## <u>PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>

# TABLE OF CONTENTS

I.    Introduction ................................................................................1

II.   Factual and Evidentiary Basis for the Representative Plaintiffs' Claims .......2

      A.    Background ...............................................................2

      B.    Each of the Representative Plaintiffs Suffered Injuries
            Traceable to Millender's Theft of Patient Records from
            the Lab at Flowers Hospital ......................................5

            1.    Bradley Smith ...............................................5

            2.    Julie S. McGee ..............................................6

            3.    Adam Parker .................................................7

            4.    Sandra Hall ..................................................8

            5.    Jack Whittle .................................................9

      C.    Materials Relied Upon by Plaintiffs .......................10

III.  The Class Definition ...............................................................11

IV.   The Claims for Which Certification is Sought ........................11

      A.    Breach of Implied Contract ....................................11

      B.    Breach of Express Contract ....................................13

      C.    Negligence .............................................................15

      D.    Negligence *Per Se* ...............................................18

V.    Legal Standards Governing Class Certification ......................19

VI.   The Requirements of Rules 23(a)(1)-(4) Are Satisfied ..........21

A.      Numerosity ....................................................................21

B.      Commonality ................................................................22

C.      Typicality ....................................................................26

D.      Adequacy of Representation .......................................29

VII.   The Rule 23(b)(3) Requirements Are Satisfied ...............................32

A.      Certification of the Proposed Class Under Rule 23(b)(3)
        Is Appropriate ..............................................................32

        1.      Predominance .....................................................33

        2.      Manageability .....................................................35

        3.      Superiority .........................................................37

VIII.  Conclusion ......................................................................39

## MEMORANDUM BRIEF IN SUPPORT OF
## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

COME NOW the Plaintiffs, Bradley Smith ("Smith"), Julie S. McGee ("McGee"), Adam Parker ("Parker"), Sandra W. Hall ("Hall") and Jack Whittle ("Whittle"), (hereinafter collectively referred to as "Plaintiffs" or the "Representative Plaintiffs"), in the above-captioned action, and submit this Memorandum Brief in support of Plaintiffs' Motion for Class Certification.[1]  As set forth below, the Representative Plaintiffs' motion is due to be granted, and a Plaintiff class certified pursuant to FED.R.CIV.P. 23(b)(3).

## I.    Introduction

In this action, the Representative Plaintiffs challenge Triad of Alabama, LLC d/b/a Flowers Hospital's (hereinafter "Flowers Hospital" or "Defendant") failure to safeguard and maintain the confidentiality of their sensitive Personal Identifying Information ("PII") and Protected Health Information ("PHI"). Plaintiffs in this case have developed a detailed factual background demonstrating that all of the elements of Rule 23 are met.  Specifically, the Representative Plaintiffs seek certification of the following class pursuant to FED.R.CIV.P. 23(b)(3):

> All persons whose personal identifying information (PII) or protected
> health information (PHI) was stolen from Flowers Hospital by

---

[1]Contemporaneously filed with this memorandum brief are Plaintiffs' Evidentiary Submissions in Support of Motion for Class Certification.

Kamarian Millender and/or his accomplices.  Excluded from the Class are the (i) owners, officers, directors, employees, agents and/or representatives of Defendant and its parent entities, subsidiaries, affiliates, successors, and/or or assigns, and (ii) the Court, Court personnel, and members of their immediate families.

## II.   Factual and Evidentiary Basis for the Representative Plaintiffs' Claims

### A.   Background

Flowers Hospital is located in Dothan, Alabama.  Flowers Hospital operates a medical laboratory inside the hospital that includes testing of blood specimens.  *See* Excerpted Portions of the Deposition of Joel Thomley ("Thomley Dep.") at 17:17-18:3, 32:14-18; attached hereto as "Exhibit A".  The lab performs testing for patients of Flowers Hospital.  *See* Excerpted Portions of the Deposition of Patti Hatcher ("Hatcher Dep.") at 22:23-23:10; attached hereto as "Exhibit B".  In addition to performing testing on Flowers Hospital's patients, approximately twenty-five to thirty clinics, nursing homes and physicians in the Dothan area contract with Flowers Hospital to perform lab testing on their patients.  *See* Thomley Dep. (Exh. A) at 23:16-24:19, 25:1-7, 25:17-26:21; *See* Hatcher Dep. (Exh. B) at 22:7-22.  Flowers Hospital refers to these referral lab patients as "non-hospital patients".  *See* Hatcher Dep. (Exh. B) at 21:23-22:3.

There are two entrances to the lab at Flowers Hospital.  *See* Hatcher Dep. (Exh. B) at 44:19-45:16.  The front entrance is unlocked and is accessible to the public through a reception area in the lab.  *See* Hatcher Dep. (Exh. B) at 43:21-23.

The back entrance to the lab was protected by keypad access with a four digit PIN number provided to Flowers Hospital's lab employees. *See* Hatcher Dep. (Exh. B) at 45:17-46:20. There are no surveillance cameras in the lab. *See* Hatcher Dep. (Exh. B) at 112:4-7.

Kamarian Millender ("Millender") was a phlebotomist employed by Flowers Hospital from June 2013 through February 26, 2014. *See* Hatcher Dep. (Exh. B) at 42:18-43:6, 91:22-92:4. Millender worked the "graveyard shift" at Flowers Hospital from 9 p.m. until 7 a.m. *See* Thomley Dep. (Exh. A) at 36:4-12. During his employment with Flowers Hospital, non-hospital patient lab records were stored in unlocked filing cabinets located in the back hallway of the lab. *See* Thomley Dep. (Exh. A) at 49:10-18, 50:9-22, 51:5-7. This back hallway was accessible to the public without keypad access. *See* Thomley Dep. (Exh. A) at 48:19-49:3. These patient lab records could contain the patient's name, address, date of birth and social security number. *See* Hatcher Dep. (Exh. B) at 34:10-23.

Millender admitted that he stole patient lab records from Flowers Hospital. *See* Plea Agreement of Kamarian Millender ("Plea Agreement") at ¶ 11(c); attached hereto as "Exhibit C". Armed with these patient lab records, Millender (along with one or more accomplices) filed at least one hundred and twenty-four (124) fraudulent, federal tax returns for the 2012 and 2013 tax years. *See* Plea Agreement (Exh. C) at ¶ 11(b)-(d).

3

Millender was apprehended by the Henry County Sheriff's Office around midnight on February 25, 2014 with fifty-four patient records in his possession.[1] *See* Hatcher Dep. (Exh. B) at 29:5-22, 35:1-12.   The patient records were lab orders taken from Flowers Hospital.   *See* Hatcher Dep. (Exh. B) at 33:7-21.   In addition to these patient records, Flowers Hospital conducted an internal investigation and discovered that five (5) daily file folders of patient records were missing from the lab.   *See* Hatcher Dep. (Exh. B) at 36:10-37:16.   These daily folders were dated August 29, 2013; August 30, 2013; September 27, 2013; September 30, 2013 and December 23, 2013.   *See* Thomley Dep. (Exh. A) at 45:19-46:6.   These daily file folders would each generally contain approximately one hundred (100) to one hundred and fifty (150) patient records.   *See* Thomley Dep. (Exh. A) at 51:8-23.   The IRS, the U.S. Postal Service and/or the U.S. Department of Justice provided Flowers Hospital with additional identities that they believed were stolen by Millender.   *See* Hatcher Dep. (Exh. B) at 49:7-21, 58:10-23, 62:16-63:5, 73:9-20, 101:2-11, 105:10-22, 114:6-13.

Flowers Hospital is governed by the provisions contained in 45 CFR § 164.502, *inter alia,* of the Health Insurance Portability and Accountability Act ("HIPAA").   *See* Defendant's Responses to Plaintiffs' Requests for Admissions

---

[1] According to IRS Special Agent, David McDaniel, a search of Millender's vehicle by the Henry County Sheriff's Office revealed a "black bag [containing] ledgers and debit cards and other paperwork and records" and "a notebook full, chockful of names and social security numbers and dates of birth."   *See U.S. v. Millender*, M.D.Ala. 1:14-CR-401-MHT (November 13, 2014), excerpted portions of transcript at 78:16-23, 81:9-15; attached hereto as "Exhibit D".

Nos. 4 & 7; attached hereto as "Exhibit E".  Pursuant to HIPAA's Privacy Rule,

Flowers Hospital sent a notification letter to 1,208 patients on April 8, 2014; April

15, 2014; April 24, 2014; May 1, 2014 and August 29, 2014 advising them of

Millender's theft of patient records and warning them that their personal

information could be misused.  *See* Defendant's Responses to Plaintiff's First Set

of Interrogatories Nos. 7 & 8; attached hereto as "Exhibit F"; Exemplar Copies of

Flowers Hospital's Data Theft Notification Letters; attached hereto as "Exhibit G".

### B. Each of the Representative Plaintiffs Suffered Injuries Traceable to Millender's Theft of Patient Records From the Lab at Flowers Hospital[2]

#### 1. Bradley Smith

Plaintiff Smith was a patient of Dr. Wessner at West Main Medical.  *See*

Excerpted Portions of the Deposition of Bradley Smith ("Smith Dep.") at 76:8-21;

attached hereto as "Exhibit H".  In approximately September, 2013, Dr. Wessner

---

[2] Because the named plaintiffs previously established Article III standing, it is unnecessary for members of the putative class to individually satisfy Article III's standing requirements.  *See* 1 H. Newberg & A. Conte, *Newberg on Class Actions* § 2.07, pp. 2–40 to 2–41 (3d ed.1992) ("[Unnamed plaintiffs] need not make any individual showing of standing [in order to obtain relief], because the standing issue focuses on whether the plaintiff is properly before the court, not whether represented parties or absent class members are properly before the court. Whether or not the named plaintiff who meets individual standing requirements may assert the rights of absent class members is neither a standing issue nor an Article III case or controversy issue but depends rather on meeting the prerequisites of Rule 23 governing class actions."); *see also* 7B Wright & Miller § 1785.1, at 141 ("As long as the representative parties have a direct and substantial interest, they have standing; the question whether they may be allowed to present claims on behalf of others . . . depends not on standing, but on an assessment of typicality and adequacy of representation").

drew blood from Smith at his office.  *See* Smith Dep. (Exh. H) at 80:5-14.  In the

spring of 2014, Smith learned from the Internal Revenue Service ("IRS") that his

identity had been stolen.  *See id.* at 46:22-47:5.  After learning this information,

Smith executed an identity theft affidavit with the assistance of his accountant.  *See

id.* at 64:3-22.  In conjunction with the theft of his identity, Smith incurred

accounting expenses, spent time attempting to resolve the situation with the IRS

and suffered emotional distress.  *See id.* at 82:7-20, 85:4-21.  Smith had never been

a prior victim of identity theft.  *See id.* at 56:15-19.

### 2.    Julie S. McGee

Plaintiff McGee was admitted to Flowers Hospital on November 29, 2007

and had blood drawn at the lab at Flowers Hospital in 2012 or 2013.  *See*

Excerpted Portions of the Deposition of Julie S. McGee ("McGee Dep.") at 13:23-

14:3, 15:10-19; attached hereto as "Exhibit I".  In April 2014, McGee's husband

was informed by their tax preparer that their 2013 tax return was rejected by the

IRS because McGee's social security number had been previously used to file a tax

return.  *See id.* at 36:19-37:18.

McGee, who is paid as an hourly employee, took one day off of work to

address the filing of the fraudulent tax return.  *See id.* at 21:22-22:9.  She also filed

a report with the Houston County Sheriff's Office and visited the IRS office.  *See

id.* at 26:1-10.  McGee also incurred postage and automobile expenses as a result

of the filing of the fraudulent tax return.  *See* McGee Dep. (Exh. I) at 29:3-12. Approximately eight (8) months after the filing of the fraudulent tax return in McGee's name, her debit card was compromised.  *See id.* at 38:6-39:8.  McGee's debit card had only been compromised once before over five years ago.  *See id.* at 39:12-18.

### 3. Adam Parker

Plaintiff Parker had blood drawn at AllSouth Urgent Care in Dothan in 2013. *See* Excerpted Portions of the Deposition of Adam Parker ("Parker Dep.") at 29:5-20; attached hereto as "Exhibit J".  AllSouth Urgent Care sent Parker's blood work to be tested at the lab at Flowers Hospital.  *See id.* at 29:11-20, 41:10-42:11.  In February 2014, Parker learned that a fraudulent tax return had been filed in his name.  *See id.* at 69:1-15, 71:8-14.  Shortly thereafter, Parker received a letter from Flowers Hospital that his identity was exposed to theft by Millender.  *See id.* at 42:4-7.  As a result, Parker purchased a credit monitoring service from Equifax. *See id.* at 49:6-13.

Parker also contacted the IRS office and met with an investigator from the Dothan Police Department.  *See id.* at 70:7-10.  Parker learned from the Dothan Police Department investigator or the district attorney that his personal information was stolen from Flowers Hospital.  *See id.* at 78:19-79:21.  Parker's federal tax refund was delayed until the summer of 2014, and he is not aware of any interest

being paid by the IRS on his refund.  *See* Parker Dep. (Exh. J) at 83:1-16, 84:22-85:9.  Prior to this incident in April 2014, Parker's identity had never been compromised or stolen.  *See id.* at 111:3-13.

### 4.  Sandra Hall

Hall was treated in-patient at Flowers Hospital in March 2013 and went to Flowers Hospital to have lab work performed between 2013 and 2015.[3]  *See* Excerpted Portions of the Deposition of Michael Hall ("Hall Dep.") at 25:14-26:15, 69:4-10; attached hereto as "Exhibit K").  In April 2014, Michael Hall learned that a fraudulent tax return was filed using his wife's social security number and attributed the filing of that false tax return to the data breach at Flowers Hospital.  *See id.* at 27:5-19, 33:1-14, 78:17-23.  In fact, Flowers Hospital sent Hall a letter on April 15, 2014 indicating that her identity was exposed to theft by Millender.  *See id.* at 41:19-42:17.

Hall was due a refund on her 2013 federal tax return.  *See id.* at 37:13-17.  Hall incurred a penalty from the IRS for late filing and late payment.  *See id.* at 53:8-54:1.  Hall paid the penalty and attributes it to the delay resulting from the data breach.  *See id.* at 59:10-17.  Finally, the stress associated with the theft of her identity took an emotional toll on Hall while she was battling cancer.  *See id.* at

---

[3] Ms. Hall recently passed away after battling cancer since 2013.  Her husband, Michael Hall, testified in her place. Plaintiffs anticipate filing a Notice of Suggestion of Death Upon the Record in the near future and seeking to substitute Mr. Hall for Ms. Hall.

66:12-67:7, 71:14-72:10; *See* Email from Patti Hatcher to Suzanne Woods and Heathyr Fields dated July 14, 2014 (Flowers/Smith 001300); attached hereto as "Exhibit L".

### 5.    Jack Whittle

Whittle was admitted as a patient to Flowers Hospital in July 2013 with a diagnosis of pneumonia.  *See* Excerpted Portions of the Deposition of Jack Whittle ("Whittle Dep.") at 23:14-24:2; attached hereto as "Exhibit M".   Whittle also recalls having blood drawn by his physician following his discharge from Flowers Hospital, but he does not recall the exact timeframe that this occurred.  *See* Whittle *id.* at 25:17-26:15.   Whittle's accountant informed his wife that their tax return could not be filed because someone had already filed a fraudulent tax return in his name using his social security number.  *See id.* at 30:6-22, 31:5-32:2.  As a result of learning this information, Whittle contacted the local police department to file an affidavit of identity theft and also contacted the IRS, the Social Security Administration and the Federal Trade Commission "to try to resolve the problem." *See id.* at 33:10-34:1.  Whittle made three trips to the IRS office and lost other time "just doing all the leg work."  *See id.* at 35:17-23, 61:2-16.

Whittle believes that his identity was stolen as a result of the theft that occurred at Flowers Hospital based upon a notification letter that he received from Flowers Hospital on April 24, 2014 indicating that his personal information was

exposed to theft by Millender.  *See* Whittle Dep. (Exh. L) at 38:15-39:7, 42:13-43:21.  Whittle signed up for credit monitoring through payroll deduction at his workplace for the calendar year of 2015.  *See id.* at 46:12-23, 47:11-22.  Whittle's 2013 tax refund was delayed by two to three months which prevented him from using the refund money for other purposes such as making purchases or paying bills.  *See id.* at 50:11-21, 55:14-23.  Whittle also had to deal with the stress of trying to reclaim his name and identity.  *See id.* at 61:17-12.  Whittle does not recall any prior unauthorized use of his identity.  *See id.* at 60:21-61:1.

## C.    Materials Relied Upon by Plaintiffs

In the instant action, the Representative Plaintiffs rely upon the Complaint, the discovery responses of the parties, deposition testimony, affidavits and the business records of the parties filed with this motion.  The practice at issue in this case is particularly suitable for class certification.   The challenged practice involved standardized and consistent conduct that applies to all class members in a uniform manner.

As previously demonstrated, all class member's PII or PHI was stolen by Millender and/or his accomplices from Flowers Hospital in the exact same manner.  Moreover, the claims for which certification is sought are particularly suitable for class action treatment.  Finally, the proposed class is easily manageable, as each class member's claim is governed by Alabama common law, and all pertinent

information regarding the class are readily available from the Defendant's records. Accordingly, this class satisfies the requirements of FED.R.CIV.P. 23(b)(3) and is due to be certified.

## III.   The Class Definition

Pursuant to FED.R.CIV.P. 23, the class of persons that the Representative Plaintiffs seek to represent is defined as follows:

> All persons whose personal identifying information (PII) or protected health information (PHI) was stolen from Flowers Hospital by Kamarian Millender and/or his accomplices. Excluded from the Class are the (i) owners, officers, directors, employees, agents and/or representatives of Defendant and its parent entities, subsidiaries, affiliates, successors, and/or or assigns, and (ii) the Court, Court personnel, and members of their immediate families.

As shown herein, all pertinent information regarding the proposed class, including each member's identity, is readily available from Flowers Hospital's records.

## IV.   The Claims for Which Certification is Sought

The Representative Plaintiffs seek certification of their claim for breach of contract pursuant to FED.R.CIV.P. 23(b)(3).

### A.   Breach of Implied Contract

For more than forty years, Alabama law has recognized that "the unauthorized release of medical records may amount to a breach of an implied contract of confidentiality on the part of the doctor." *Crippen v. Charter Southland*

11

*Hospital, Inc.*, 534 So.2d 286, 288 (Ala. 1988), citing *Horne v. Patton*, 287 So.2d

824, 831-832 (Ala. 1973).

> Any time a doctor undertakes the treatment of a patient, and the consensual relationship of physician and patient is established, two jural obligations (of significance here) are simultaneously assumed by the doctor. Doctor and patient enter into a simple contract, the patient hoping that he will be cured and the doctor optimistically assuming that he will be compensated. As an implied condition of that contract, this Court is of the opinion that the doctor warrants that any confidential information gained through the relationship will not be released without the patient's permission. Almost every member of the public is aware of the promise of discretion contained in the Hippocratic Oath, and every patient has a right to rely upon this warranty of silence. The promise of secrecy is as much an express warranty as the advertisement of a commercial entrepreneur. Consequently, when a doctor breaches his duty of secrecy, he is in violation of part of his obligations under the contract.

*Horne*, at 710. Medical providers in Alabama are subject to implied contracts

when a patient relationship exists. It is undisputed that Flowers Hospital

considered members of the putative class to be patients. *See* Hatcher Dep. (Exh.

B) at 22:7-22. Further, the Alabama Supreme Court recognizes the right of a

plaintiff to sue for breach of implied contracts arising from the rendition of medical

services. *Taylor v. Baptist Medical Center, Inc.*, 400 So.2d 369, 374 (Ala. 1981);

*see also Horton v. Northeast Ala. Regional Medical Center, Inc.*, 334 So.2d 885

(1976); and *Berry v. Druid City Hospital Board*, 333 So.2d 796 (Ala. 1976).

In this instance, the implied contract focuses solely on the behavior and

actions of Flowers Hospital. It does not require any individual inquiry into each

class member's understanding of the terms of the implied agreement. Instead, the proof necessary to establish the Defendant's breach of the implied contract is the *exact same* for each and every class member. The only evidence necessary to establish this breach is Flowers Hospital's admission and/or general evidence that the PII or PHI of the putative class was stolen or compromised during Millender's theft of patient records.

### B.   Breach of Express Contract

With respect to the Representative Plaintiffs' breach of express contract claim, the elements under Alabama law are:  "(1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Shaffer v. Regions Fin. Corp.*, 29 So.3d 872, 880 (Ala. 2009). Certain of the Representative Plaintiffs (McGee, Hall and Whittle) obtained a Notice of Privacy Practices ("NPP") from Flowers Hospital as a result of their admission to Flowers Hospital as a patient. *See* McGee Hall and Whittle Acknowledgments of Receipt of NPP; attached hereto as "Exhibit N". These NPPs constitutes a binding contract setting forth Flowers Hospital's obligation to maintain the confidentiality of McGee, Hall and Whittle's PII or PHI. For this privacy obligation to exist, Flowers Hospital must have entered into a contract with at least one of the Representative Plaintiffs and members of the putative class. The NPP defines the rights and obligations of each party.

13

Exemplar copies of Flowers Hospital's standard, form NPPs are attached as "Exhibit O". The applicable provision in these contracts is the *same* for all class members. *See* Hatcher Dep. (Exh. B) at 68:1-69:2.

Again, the proof necessary to establish the Defendant's breach of the contract is the *exact same* for each and every class member. The only evidence necessary to establish this breach is Flowers Hospital's admission and/or general evidence that the PII or PHI of the putative class was stolen or compromised during Millender's theft of patient records. Because the evidence demonstrates that Flowers Hospital breached the explicit terms of its standard, form NPP by not maintaining the confidentiality of certain patients' PII or PHI, class certification of the breach of contract claim should be granted.

Claims for a breach of a standard, form contract are particularly suitable for the class action device. *Allapattah Services, Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) (Certifying nationwide class of gas station owners against Exxon for state-based breach of contract claims related to price of wholesale gasoline). "When viewed in light of Rule 23, claims arising from a form contract appear to present a classic case for treatment as a class action, and breach of contract cases are routinely certified as such." *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, 692 (N.D. Ga. 1983). Numerous courts have allowed breach of contract claims to proceed on a class-wide basis. *See Morris v.*

14

*Transouth Financial Corp.*, 175 F.R.D. 694 (M.D. Ala. 1997); *Leszczynski v. Allianz Insurance Company*, 176 F.R.D. 659 (S.D. Fla. 1997); *Mortinore v. Federal Deposit Insurance Company of America Sale Practices Litigation,* 962 F. Supp. 450 (D. NJ. 1997); *Ettinger v. Merrill Lynch Pierce, Fenner and Smith, Inc.,* 122 F.R.D. 177 (E.D. Pa. 1998).

Defendant's standard, form contract can be interpreted on its face. Moreover, parol evidence is barred from being admitted in this case. *See Pasquale Food Co. Inc. v. L & H Intern. Airmotive, Inc.*, 283 So.2d 438, 443 (Ala. Civ. App. 1973) (recognizing "the established general rule is that where a written contract exists between two parties, parol evidence cannot be received to explain, contradict, vary, add to, or subtract from its terms."). Accordingly, there is no need for individual inquiry in a breach of contract claim, and Plaintiffs' claim for breach of express contract should be certified.

### C.   Negligence

In order to prove their negligence claim, Plaintiffs must establish "(1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation and (4) damage or injury." *Albert v. Hsu,* 602 So.2d 895, 897 (Ala. 1992). While negligence claims are not commonly certified under FED.R.CIV.P. 23, there are numerous courts that have held that certification is appropriate when the negligent act and resulting damages arise from a common set of operative facts.

*See, e.g. Mullen v. Treasure Chest Casino,* 186 F.3d 620, 626 (5th Cir. 1999) (affirming decision where "district court held that the issues to be tried commonly—seaman status, vessel status, negligence, and seaworthiness—were significant in relation to the individual issues of causation, damages, and contributory negligence"); *Watson v. Shell Oil Co.,* 979 F.2d 1014, 1023 (5th Cir.1992) (affirming class certification for negligence claim in mass tort litigation and noting that "this litigation differs markedly from toxic tort cases . . . in which numerous plaintiffs suffer varying types of injury at different times and through different causal mechanisms, thereby creating many separate issues"); *In re Telectronics Pacing Systems, Inc.,* 172 F.R.D. 271, 288 (S.D. Ohio 1997) (finding common issues predominated where all negligence claims seek to resolve whether defendant is legally responsible for product failure, and individual issues pertain to causation and damages); *In re Copley Pharm., Inc.,* 158 F.R.D. 485, 492 (D.Wyo.1994) (finding common issues predominate plaintiffs' claims for, *inter alia,* negligence where "issues, surrounding the Defendant's liability for the contaminated [drug], may be tried to a single jury in a unified trial. Then, if the Plaintiffs are successful, class members may pursue their individual cases in separate trials to determine if they suffered an injury from the contaminated [drug], and if so, the proper measure of any damages."); *Sala v. Nat'l R.R. Passenger Corp.,* 120 F.R.D. 494, 499 (E.D.Pa.1988) (concluding common issues

predominate where "each of the members of the class will base their liability claim on the same common nucleus of operative facts . . . each class member will offer precisely the same proof to establish defendant['s] alleged liability towards and breach of duty to [plaintiffs]"); *Hernandez v. Motor Vessel Skyward,* 61 F.R.D. 558, 561 (S.D.Fla.1973), *aff'd,* 507 F.2d 1278 (5th Cir.1975) (unpublished) (certifying common issue of whether defendants were negligent in preparing either drinking water or food that was available for consumption by passengers as subject to a uniform determination, although issues of proximate cause of each passenger's illness, contract liability, the adequacy of medical treatment afforded each passenger, and damages are individual in nature).

In a similar situation, the United States District Court for the District of Minnesota certified a negligence claim on behalf of a nationwide class of financial institutions in data breach litigation involving a retailer. *In re: Target Corp. Customer Data Sec. Breach Litigation*, 309 F.R.D. 482, 487 (D.Minn. 2015). Further, in an analogous case, the United States District Court for the Northern District of Georgia certified issues relating to a negligence claim involving a crematory that was alleged to have commingled human remains and failed to properly perform cremations. *In re: Tri-State Crematory Litigation*, 215 F.R.D. 660, 694-697 (N.D. Ga. 2003). While the plaintiffs in the case could not establish that their loved ones' remains were mishandled by the crematory, they alleged that

they suffered emotional distress as a result not knowing if their loved ones were properly cremated. *See id.* at 673-675. In granting issue certification, the court held that common issues predominated over any individual issues:

> Further, the facts of this case do not vary greatly from one Defendant to another or from one Plaintiff to another. The facts of this case are essentially identical for every Plaintiff: Plaintiffs allege that each and every Plaintiff relied on a Funeral Home Defendant to handle the cremation of Plaintiff's loved one. Each and every Plaintiff claims that a Funeral Home Defendant failed to perform that service in a manner that conformed to the standard of care for the funeral home industry, and the Plaintiff suffered emotional injury because the Funeral Home Defendant failed to perform to the standard of care. The Court concludes that variations in conduct from one Plaintiff to another do not predominate over the overwhelming common issues related to Defendants' conduct.

*Id.* at 696.

Similarly, no individual inquiry is required to establish a negligence claim in this case. The facts of this case are identical for each Plaintiff – it is undisputed that Millender stole patient lab records from Flowers Hospital. Moreover, all Plaintiffs allege that Flowers Hospital breached the applicable standard of care by failing to safeguard their PII or PHI and suffered the same or similar types of damages – including emotional distress. Accordingly, class certification should be granted on the negligence claim.

### D.   Negligence *Per Se*

To establish negligence per se, Plaintiffs must prove "(1) that the statute the defendant is charged with violating was enacted to protect a class of persons to

which the plaintiff belonged; (2) that the plaintiff's injury was the kind of injury contemplated by the statute; (3) that the defendant violated the statute; and (4) that the defendant's violation of the statute proximately caused the plaintiff's injury." *Cook's Pest Control, Inc. v. Rebar*, 28 So.3d 716, 726 (Ala. 2009).

Negligence *per se* claims are capable of certification under FED.R.CIV.P. 23 when a plaintiff can demonstrate violation of a statute using class-wide proof. *See In re: Target Corp. Customer Data Sec. Breach Litigation*, 309 F.R.D. at 487, n. 3 (certifying negligence *per se* claim when defendant's alleged violation of state statute was susceptible to class-wide proof). Here, Plaintiffs allege that Flowers Hospital's failure to safeguard their PII or PHI violates HIPAA and constitutes negligence *per se*. Plaintiffs intend to introduce HIPAA's requirements and Flowers Hospital and Millender's conduct to prove the violation of the statute. There is no individual proof that will be necessary to prove this claim, and therefore it should be certified.

## V.    Legal Standards Governing Class Certification

Class certification is a procedural issue that should be resolved expeditiously. FED.R.CIV.P. 23(c)(1) mandates the determination of class certification "as soon as practicable after the commencement" of the action. Certification of a class "may be conditional, and may be altered or amended" at any time before a decision is reached on the merits. *Id.* The court has broad

discretion in determining whether the prerequisites of Rule 23 are met. *Califano v. Yamasaki*, 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979).

The United States Supreme Court held that there is nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.  Indeed, such a procedure contravenes the Rule. *Eisen v. Carlisle & Jaquelin,* 417 U.S. 156, 177-78 (1974).  *See Kirkpatrick v. J. C. Bradford & Co.,* 827 F.2d 718 (11th Cir. 1987), *cert. denied*, 485 U.S. 959 (1988); *Fifth Moorings Condominiums, Inc. v. Shere,* 81 F.R.D. 712 (S.D.Fla.1979); *Walco Investments, Inc. v. Thenen,* 168 F.R.D. 315, (S.D.Fla.1996) (at this stage of the proceedings [delving into factual matters] would be tantamount to an improper examination of the underlying merits).

Rule 23 should be given "a liberal rather than a restrictive interpretation." *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 563 (2nd Cir. 1968), *rev'd on other grounds*, 417 U.S. 156 (1974).  "[I]f there is to be an error made, let it be in favor and not against the maintenance of the class action."  *Esplin v. Hirschi,* 402 F.2d 94, 99 (10th Cir. 1968), *cert. denied*, 394 U.S. 928 (1969); *see also, Eisenberg v. Gagnon,* 766 F.2d 770 (3d Cir 1985); *Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir 1968), *cert. denied*, 395 U. S. 977 (1969); *CV Reit, Inc. v. Levy*, 144 F.R.D. 690,

695 (S.D. Fla 1992); *Joseph v. General Motors Corp.*, 109 F.R.D. 635 (D. Colo. 1986) (any doubts should be resolved in favor of class certification).

Class certification is proper if the Representative Plaintiffs can show that they meet the requirements of FED.R.CIV.P. 23(a) and also come within one of the provisions of 23(b). *Coleman v. Cannon Oil Co.*, 141 F.R.D. 516 (M.D. Ala. 1992). As set forth below, the Representative Plaintiffs meet the requirements of both Rule 23(a) and Rule 23(b)(3). Accordingly, certification of a Plaintiff class in this case is proper.

## VI. The Requirements of Rules 23(a)(1)-(4) Are Satisfied

FED.R.CIV.P. 23(a) states as follows:

**(a)** **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

As the Representative Plaintiffs demonstrate below, each of the requirements of Rule 23(a) are satisfied.

### A. Numerosity

While there is no rule as to when the number of plaintiffs is too large to make joinder impracticable, the oft-cited benchmark is that a class action is presumptively appropriate when the members of the class exceed forty (40)

21

persons.  *See e.g.*, *Korn v. Franchard Corp.,* 456 F. 2d 1206, 1209 (2d Cir. 1972); *Philadelphia Electric Co. v. Anaconda American Brass Co.,* 43 F.R.D. 452 (E.D. Pa. 1968); *see also* 1 H. Newberg & A. Conte, *Newberg on Class Actions* § 3.05, p. 3-25 (3d ed. 1992) ("In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the Plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone.").

Class size plainly favors certification in this case.  Flowers Hospital admits that it determined that the lab records of 1,208 patients could not be located and that it sent those patients a HIPAA Notification Letter after it learned about Millender's theft of patient records.  *See* Defendant's Responses to Plaintiffs' Requests for Admissions No. 2 (Exh. E).  Moreover, Millender admitted that he stole patient records from Flowers Hospital and filed at least one hundred and twenty-four (124) fraudulent tax returns in 2013 and 2014.  *See* Plea Agreement (Exh. C) at ¶ 11(b)-(d).  It cannot be credibly disputed that the Representative Plaintiffs meet their burden of establishing numerosity.

### B.    Commonality

Rule 23(a)(2) requires that there be either questions of law or fact common to the class.  This prerequisite does not require that all of the questions of law or fact raised by the case be common to all of the plaintiffs.  *Singer v. AT&T Corp.*,

185 F.R.D. 681 (S.D. Fla. 1998) (citing *Haitian Refugee Center, Inc. v. Nelson*, 694 F.Supp. 864, 877 (S.D. Fla. 1988).

In *Coleman v. Cannon Oil Co.*, 141 F.R.D. 516 (M.D. Ala. 1992), Judge Thompson summarized the Rule 23(a) requirement of commonality as follows:

> The commonality requirement of Rule 23(a) does not require that identical questions of law or fact are common to the class, only that the issue of liability is common.
>
> \* \* \*
>
> Rule 23(a)(2) requires that 'there are questions of law or fact common to the class.' Yet not every question of law or fact must be common to every member of the class. The requirement is met if the questions linking the class members are 'substantially related to the resolution of the litigation even though the individuals are not identically situated.' Identical questions are not necessary and factual discrepancies are not fatal to certification. Rule 23(a)(2) may be satisfied if common questions of liability are present despite individual differences in damages. *In re: Workers' Compensation*, 130 F.R.D. 99, 104 (D. Minn. 1990).

*Coleman,* 141 F.R.D. at 520.

Indeed, case after case establishes that Rule 23(a)(2) is satisfied by the existence of *either* a single common issue of law *or* fact. *Brown v. Cameron - Brown Co*., 92 F.R.D. 32, 37 (E.D. Va. 1981) (allegation of conspiracy in antitrust case sufficient to satisfy Rule 23(a)(2)); *Blackie v. Barrack*, 524 F.2d 891, 904 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976) (application of accounting and legal principles as to defendant's duty to maintain adequate reserve was a common question of law to be applied to each class member's unique factual situation). If a

23

single issue is critical to the determination of the litigation, then that issue alone satisfies the predominance criteria of Rule 23(b)(3).  *In re Agent Orange Product Liability Litigation* MDL No. 381, 818 F.2d 145, 166-167 (2d Cir. 1985), *cert. denied*, 484 U.S. 1004 (1988) (government contractor defense central to class action and thus common issues concerning it predominate); *Stewart v. Winter*. 669 F.2d 328 (5th Cir. 1982) (holding that the presence of *one* common question of law or fact is sufficient to certify a class).

"Commonality may exist where the party opposing the class has engaged in a course of conduct that affects all class members and gives rise to a plaintiff's claim." *Dujanovic v. Mortgage Am., Inc.*, 185 F.R.D. 660, 667 (N.D. Ala. 1999); *see also Braxton v. Farmer's Ins. Group*, 209 F.R.D. 654, 658 (N.D. Ala. 2002); 1 H. Newberg and A. Conte, *Newberg on Class Actions* § 310, pp. 154-155 (3rd ed. 1992).  Courts typically have found a common nucleus of operative facts existing where, as in the present action, the defendant engaged in standardized conduct toward the class members.  *See, e.g., In re: The Prudential Ins. Co. of America Sales Practices Litigation,* 148 F. 3d 283, 309-310 (3d Cir. 1998).

In this case, Defendant engaged in the following common and uniform practices that give rise to the Representative Plaintiffs' claims:

> (a)   Failing to properly safeguard the confidentiality of PII or PHI;
>
> (b)   Failing to meet the standards established by HIPAA;

24

(c)     Providing inessential employees with access to patient records;

(d)     Storing patient records in unlocked filing cabinets;

(e)     Failing to provide timely notice of the theft of patient records;

(f)     Breaching implied contracts regarding patient confidentiality;

(f)     Breaching express contracts regarding patient confidentiality;

The common legal and factual issues pervade this action and dwarf any individual issues that may be present.  The evidence establishes that Millender stole patient records from an unlocked filing cabinet at Flowers Hospital and used those records to file fraudulent tax returns.  Moreover, Flowers Hospital's internal investigation concluded that most of the Representative Plaintiffs' PII or PHI was exposed to Millender's theft.  Finally, each of the Representative Plaintiffs had a fraudulent tax return filed in his or her name.  The evidence demonstrates that a common nucleus of operative facts governs the claims in this class action.

The claims in this lawsuit arise from a common course of conduct and a common set of circumstances.  Common questions of law and fact arising from this course of conduct and set of circumstances include, but are not limited to, the following:

(a)     Whether an NPP constitutes a contract;

(b)     Whether Flowers Hospital breached an express contract;

(c)     Whether Flowers Hospital breached an implied contract;

(c)     Whether   Flowers   Hospital   complied   with   HIPAA's requirements;

(d)     Whether Flowers Hospital was negligent;

(e)     Whether Flowers Hospital owed a duty to the Representative Plaintiffs and members of the putative class to maintain the confidentiality of their PII or PHI;

(f)     Whether Flowers Hospital provided timely notice of the theft to patients;

(g)     Whether Flowers Hospital provided adequate notice of the theft to patients;

(f)     Whether the Representative Plaintiffs are entitled to the class-wide relief sought in the complaint?

Based upon these common questions of both fact and law, the commonality requirement is amply satisfied.

## C.     Typicality

Typicality refers to the nature of the claims of the class representatives, and not to the specific facts from which those claims arose or upon which relief is sought.  For a plaintiff to meet Rule 23(a)'s requirement of typicality, "[a] class representative must possess the same interest and suffer the same injury as the class members. . ."  *Murray v. Auslander*, 244 F.3d 807, 810 (11th Cir. 2001). Typicality may be present even when "substantial factual differences" exist, as long as there "is a 'strong similarity of legal theories.' " *Murray*, 244 F.3d at 811; *see also Wright v. Circuit City Stores, Inc.*, 201 F.R.D. 526, 543 (N.D. Ala. 2001)

("particular factual differences, differences in the amount of damages claimed or even the availability of certain defenses against a class representative may not render his or her claims atypical.") (citations omitted).

The typicality of the Representative Plaintiffs' claims is apparent on the face of the complaint and has been established through discovery. The Representative Plaintiffs each bring claims arising out of the theft of their PII or PHI from Flowers Hospital by Millender and/or his accomplices. Additionally, the Representative Plaintiffs seek to bring claims for breach of express contract, breach of implied contract, negligence and negligence *per se*. These are the same claims being sought on behalf of the putative class. Finally, the Representative Plaintiffs suffered the same types of damages as the putative class. These damages generally consist of lost wages, purchase of credit monitoring services, failure to receive interest on tax refunds, payment of IRS penalties, miscellaneous expenses (i.e. gas, postage, etc.) associated with sorting out the theft of their identity and mental anguish.

In determining typicality, the test is whether other members of the class have the same or similar injuries and whether the focus of the litigation is directed toward a common course of conduct resulting in such injury. "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met

irrespective of varying fact patterns which underlie individual claims." 1 H. Newberg and A. Conte, *Newberg on Class Actions* § 3.13, p. 3-77 (3d ed. 1992). In the words of the United States Supreme Court, "[t]he typicality requirement is said to limit the class claims to those fairly encompassed by the named plaintiffs' claims." *General Telephone Co. of the N.W., Inc. v. Equal Employment Opportunity Commission*, 446 U.S. 318, 330 (1980).

It is undisputed that the Representative Plaintiffs and each member of the class were subjected to the same treatment by Flowers Hospital. Through no fault of their own, the Representative Plaintiffs and members of the putative class had their PII or PHI stolen by Millender -- an employee of Flowers Hospital. Moreover, all of the Representative Plaintiffs had a fraudulent tax return filed on their behalf. Millender pleaded guilty to stealing patient files from Flowers Hospital and to filing fraudulent tax returns. The Representative Plaintiffs and each member of the class assert the same legal theory and seek the same relief.

The evidence necessary to support the Representative Plaintiffs' claims and the claims of the class members is identical. The same factual presentation and legal argument will be relied upon by both the Representative Plaintiffs and all members of the class with respect to the common questions of liability and damages. Moreover, Defendant's liability for damages to the class does not depend upon individual circumstances. In this instance, the Representative

28

Plaintiffs clearly possess a claim for breach of contract, negligence and negligence *per se*, and these claims are typical of the claims of the class members. Accordingly, the typicality requirement is satisfied in this case.

### D.    Adequacy of Representation

The fourth requirement of Rule 23(a) is satisfied if the "named representatives have interests in common with the proposed class members and the representatives and their qualified attorneys will properly prosecute the class action." *Gonzalez v. Cassidy,* 474 F. 2d 67, 72 (5th Cir. 1973).  The existence of the elements of adequate representation are presumed, and the burden is on Defendants to demonstrate that the representation will be inadequate.  *See Mueller v. CBS, Inc.*, 200 F.R.D. 227 (W.D. Pa. 2001) (citing *Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239, 247 (3d Cir. 1975), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975)).

The Court may conduct a two part inquiry to determine adequacy:  "(1) whether any substantial conflicts of interest exist between the named plaintiff and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003); *see also Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726-728 (11th Cir. 1987) ("[t]he adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent.").

Here, the Representative Plaintiffs' claims are typical of, if not identical to, those of the absent class members.  Therefore, the Representative Plaintiffs are *not* rendered "inadequate" by virtue of unique circumstances which might jeopardize the claims of the class.  Moreover, the Representative Plaintiffs are committed to protecting the interests of the putative class members and are unaware of any present or future conflicts that exist between their interests and the interests of the putative class.  *See* Declaration of Bradley Smith, attached hereto as "Exhibit P"; Declaration of Julie S. McGee,; attached hereto as "Exhibit Q"; Declaration of Adam Parker, attached hereto as "Exhibit R" and Declaration of Jack Whittle; attached as "Exhibit S".  Finally, the Representative Plaintiffs have already demonstrated a high degree of commitment to this litigation by assisting counsel in providing discovery responses and making themselves available to give deposition testimony.  *See id.*

The Representative Plaintiffs' counsel have years of experience prosecuting class actions and are dedicated to vigorously promoting the interests of the class in this case.[4]  *See* Biographies of Plaintiffs' Counsel; attached hereto as "Exhibit T". Attorneys for McCallum, Methvin & Terrell, P.C. have participated as Class Counsel in numerous class actions over the last fifteen (15) years.  More specifically, the undersigned has been appointed:  (1) Class Counsel for a

---

[4] Plaintiffs will address FED.R.CIV.P. 23(g)'s requirements in conjunction with their analysis of FED.R.CIV.P. 23(a)(4).

nationwide class of pharmacy owners in a class action certified in the United States District Court for the Middle District of Alabama;[5] (2) Class Counsel for a nationwide class of pharmacy owners in a class action certified in the United States District Court for the Northern District of Alabama;[6] (3) Class Counsel for hospital policyholder plaintiffs in a multi-district litigation proceeding pending the United States District Court for the Western District of Tennessee;[7] and (4) Class Counsel for a nationwide class of life insurance policyholders in a class action certified in the Superior Court of Los Angeles County, California.[8]   Plaintiffs' Counsel is unaware of any conflicts of interests that would render them inadequate to represent the putative class in this case and respectfully submit that they will fairly and adequately protect the interests of the putative class.

---

[5] *Eufaula Drugs, Inc., et al. v. Eckerd Health Systems, et al.*, Civil Action No. 2:05-CV-00293-MEF (United States District Court for the Middle District of Alabama).

[6] *Jackson's Rocky Ridge Pharmacy, Inc. and Pearson's Pharmacy, Inc. v. Argus Health Systems, Inc.*, Civil Action No. 2:05-CV-0702-UWC (United States District Court for the Northern District of Alabama).

[7] *In Re: Reciprocal of America (ROA) Sales Practices Litigation*, MDL Docket No. 1551, Civil Action No. 04-md-1551-JDB (United States District Court for the Western District of Tennessee).

[8] *Eddie L. Cressy v. Fidelity & Guaranty Life Insurance Company, et al.*, Case No. BC514340 (Superior Court of Los Angeles County, California).

31

## VII.   The Rule 23(b) Requirements are satisfied.

This litigation satisfies all prerequisites set forth by Rule 23(a), as set forth above.  Plaintiffs propose certification under FED.R.CIV.P. 23(b)(3).  FED.R.CIV.P. 23(b) provides as follows:

> **(b) Class Actions Maintainable.**  An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> ***
>
> **(3)** the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

As demonstrated below, the requirements of Rule 23(b)(3) are satisfied.

### A.      Certification of the Proposed Class Under Rule 23(b)(3) is Appropriate

For an action to be maintained as a class action pursuant to Rule 23(b)(3), two additional determinations must be made: (1) questions of law and fact predominate over any questions affecting only individual members, and (2) a class action is superior to other forms available for the fair and efficient adjudication of

the litigation.   FED.R.CIV.P. 23(b)(3).   Factors which enter into this analysis include:  (1) the interests of individuals in controlling their own case; (2) the extent of any pre-existing litigation; (3) the desirability of concentrating litigation in one forum; and (4) the difficulties likely to be encountered in the management of a class action.   As demonstrated below, this case satisfies both the predominance, manageability and superiority requirements of Rule 23(b)(3).

### 1.   Predominance

The purpose of the predominance requirement is to determine "whether the individual questions in a case are so overwhelming as to destroy the utility of the class action."   *Partain v. First National Bank of Montgomery*, 59 F.R.D. 56, 59 (M.D. Ala. 1973).   In deciding predominance, the Court may take in account variations in state law and problems of manageability.   As discussed below, the class and the class claims present no manageability problems.   Moreover, the "variation in state law" consideration is unnecessary, because this action is governed by Alabama law.[9]   Finally, no individual questions exist as to either the breach of contract claims or the negligence claims.

---

[9] The Court must apply the choice-of-law rules of the state in which it sits.  *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). In tort actions, Alabama applies the traditional choice of law principles of *lex loci delicti* and applies the rule of *lex loci contractus* in contract actions.  *Morris v. SSE, Inc.*, 912 F.2d 1392, 1396 (11th Cir. 1990).   Under both of these tests, Alabama law applies, because the injury occurred and a contract was formed at Flowers Hospital in Dothan, Alabama.

In performing the predominance inquiry, the Court must examine each claim by the named plaintiff and compare its similarity to the claims of the proposed class. *See Rutstein  v. Avis Rent-A-Car Systems, Inc.*, 211 F. 3d 1228, 12359 (11th Cir. 2000) ("Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each member's underlying cause of action.").  If a determination of liability turns "upon highly individualized facts", then common issues of law or fact do not predominate.  *See id.* at 1235-1236 (*quoting McCarthy v. Kleindienst*, 741 F.2d 1406, 1415 (D.C. Cir. 1984)).  However, "[i]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions."  *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004) (citation omitted); *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008).

A predominance analysis may also require an examination of the elements of the claims at issue and the proof required to prove those claims.  *Weil v. Long Island Savings Bank, FSB,* 200 F.R.D. 164, 173 (E.D. N.Y. 2001).  The substantive law regarding Plaintiffs and the class members' claim for breach of contract and negligence claims are outlined above and are governed exclusively by Alabama law.   As previously demonstrated, neither a breach of contract claim nor a

34

negligence claim requires individualized proof.  Moreover, as discussed above, the proof necessary to prove this claim is the *exact same* for each class member and focuses squarely upon the conduct of Flowers Hospital.  Based upon the similarity of proof necessary to establish the Representative Plaintiffs' claims, the common issues plainly predominate over any individual issues.

The only variance among the claims of the class is the type and amount of damages suffered by each class member.  Variations in the types or amounts of damages does defeat superiority.   "[T]he presence of individualized damages issues does not prevent a finding that the common issues in the case predominate." *Allapattah Servs., Inc.,* 333 F.3d at 1261.  "Typically, even if courts must confront some individualized damages issues, common issues predominate if liability can be determined on a classwide basis."  *Herrera v. JFK Medical Center Limited Partnership*, 2016 WL 1637826, *5 (11th Cir. April 26, 2016); citing *Allapattah*, 333 F.3d at 1261.

### 2.    Manageability

The class proposed by the Representative Plaintiffs is readily manageable. First, Plaintiffs only seek certification of claims properly maintainable as such. The deposition testimony of Defendants' designated representatives shows that the members of the class can be easily identified from Defendant's records.  Flowers Hospital compiled a list of 1,208 patients whose PII or PHI was exposed to theft by

Millender and sent notification of the data theft to those individuals. *See* Hatcher Dep. (Exh. B) at 98:2-23. As outlined in Plaintiffs' pending motion to compel (Doc. # 60), there are a small number of additional putative class members whose identities do not appear on this list of 1,208 patients created by Flowers Hospital. For example, the IRS, the U.S. Postal Service and the U.S. Department of Justice provided lists of names to Flowers Hospital, but all of the names on those lists do not appear on the list created by Flowers Hospital. Accordingly, the proposed class presents no manageability hurdles, and Defendant cannot seriously challenge the manageability of the proposed class.

In conclusion, this relatively small class action should not present any manageability problems. The class members can be readily identified for the purposes of distributing notices. Until Defendant articulates concrete and significant manageability problems (which it cannot do), the Court should err on the side of certifying the proposed class. "Difficulties in management are of significance only if they make the class action a *less* 'fair and efficient' method of adjudication than other available techniques." *In Re Domestic Air Transportation Antitrust Litigation*, 137 F.R.D. 677 (N.D. Ga. 1991) (emphasis in original); quoting *In re Antibiotic Antitrust Actions,* 333 F.Supp. 278, 282 (S.D.N.Y. 1971). Indeed, as Judge Thompson observed in *Coleman*, "denial of class certification because of suspected manageability problems is disfavored among both the courts

and the legal commentators because a court refusing to certify a class action on the basis of vaguely perceived manageability obstacles is acting counter to the policy behind Rule 23. . .” *Coleman*, 141 F.R.D. at 528.

### 3.    Superiority

The superiority requirement is, by its terms, a comparative method which presumes the availability of other methods of adjudication.  *Partain*, 59 F.R.D. at 61.  Therefore, in order to establish a lack of superiority, Defendant must show that there are other alternative “superior” methods of resolving the claims of the class members.  *M. Simon v. Westinghouse Electric Corp.*, 73 F.R.D. 480, 487 (E.D. Pa. 1977).  “Rule 23(b)(3)’s superiority requirement expressly compares class actions ‘to other available methods for fair and efficient adjudication of the controversy.’ ” 2 H. Newberg, *Newberg on Class Actions* § 4.27 (4th ed. 2002).

“One of the most important objectives of the class action procedure is the aggregation of a small number of claims to allow for relief in situations where it might not otherwise be obtainable.”  *Morris v. Transouth Financial Corp.,* 175 F.R.D. 694, 700 (M.D. Ala. 1997).  As the Eleventh Circuit noted in *Klay*, “the predominance analysis . . . has a tremendous impact on the superiority analysis . . . for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs’ claims.”  382 F.3d at 1269, *abrogated in part on other*

*grounds*.  Under the circumstances of this case, class treatment is clearly a superior means to adjudicate the controversy.

As demonstrated, the claims of each class member are relatively small. Furthermore, given the circumstances of this case, it is probable that many claims will not be pursued, because many class members may be unaware of their potential claims.[10]  Accordingly, "[t]his case presents an issue of vindication of rights that, in the absence of collective action, would not be vindicated.  Fairness as well as efficiency would be served by class certification."  *Coleman v. Cannon Oil Co.,* 141 F.R.D. 516,529 (M.D. Ala. 1992).

Similarly, the issues presented in this case would be best resolved through the class action device.  A class action will protect the claims of absent class members, all of which are substantially identical in this case, and will "achieve the economies of time, effort, and expense."  *Sterling v. Velsicol Chemical Corp*. 855 F.2d 1188, 1196 (6th Cir. 1988).  Any interest that class members may have in individually prosecuting actions is clearly outweighed by the expense and inefficiency of repetitive, separate suits.  *See* FED.R.CIV.P. 23(b)(3)(A).

The purpose of class actions is to ensure "uniformity of decision" for a class of similarly situated plaintiffs.  *Amchem Products v. Windsor*, 521 U.S. 591, 613-

---

[10] It has been over two and one-half (2½) years since Millender's arrest, and no other lawsuits against Flowers Hospital have been filed arising out of Millender's theft of patient records.  *See* Hatcher Dep. 152:8-13.

616 (1997); *see also Kamm v. California City Development Company*, 509 F.2d 205, 211 (9th Cir. 1975).  A class action is clearly superior to individual suits if it reduces the risk of inconsistent adjudications for plaintiffs who would otherwise have to litigate separately.  *Lewis v. National Football League*, 146 F.R.D. 5 (D.C. Dist. 1992).  Class certification in this instance would eliminate the manifest risk of inconsistent adjudications brought by similarly situated plaintiffs.

**VIII. Conclusion**

Without a doubt, Flowers Hospital breached its contracts with the patient class members.  Moreover, Defendant acted negligently in safeguarding the patient information belonging to Plaintiffs and the putative class.   While the Representative Plaintiffs do not have to prove the merits of their claim at this point, it is without question that the challenged conduct is improper and that the Representative Plaintiffs' success on the merits is likely.   Moreover, the Representative Plaintiffs have demonstrated that an ascertainable class and a well-defined community of interest exists among the class members.  No individual issues of fact or law need to be proven in order to determine the rights and remedies of the proposed class.

Accordingly, the Representative Plaintiffs respectfully request that this Court certify the class of "[a]ll persons whose personal identifying information (PII) or protected health information (PHI) was stolen from Flowers Hospital by

Kamarian Millender and/or his accomplices.  Excluded from the Class are the (i) owners, officers, directors, employees, agents and/or representatives of Defendant and its parent entities, subsidiaries, affiliates, successors, and/or or assigns, and (ii) the Court, Court personnel, and members of their immediate families."

Respectfully submitted this 29th day of August 2016.


/s/ James M. Terrell
James M. Terrell (ASB-0887-L73J)
MCCALLUM, METHVIN & TERRELL, P.C.
2201 Arlington Avenue South
Birmingham, AL 35205
Telephone: (205) 939-0199
Email:  jterrell@mmlaw.net

**OF COUNSEL:**
M. Adam Jones (ASB-7342-J63M)
Jordan S. Davis (ASB-5103-D58D)
M. ADAM JONES & ASSOCIATES, LLC
206 N. Lena St.
Dothan, AL  36303-4429
Telephone: (334) 699-5599
Email:  adam@adamjoneslaw.com
        jordan@adamjoneslaw.com

Attorneys for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that I have filed the foregoing pleading using the Court's CM/ECF electronic filing system on August 29, 2016, which will deliver a copy of this pleading to all counsel of record in this matter, including:

Richard E. Smith
Jonathan W. Macklem
J. Paul Zimmerman
CHRISTIAN & SMALL LLP
505 20th Street North
Suite 1800 Financial Center
Birmingham, AL  35203

/s/ James M. Terrell
**OF COUNSEL**

41