IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BRADLEY S. SMITH, JULIE S.<br>MCGEE, ADAM PARKER,<br>MICHAEL HALL, and JACK<br>WHITTLE,<br><br>    Plaintiffs,<br><br>    v.<br><br>TRIAD OF ALABAMA, LLC,<br>d/b/a FLOWERS HOSPITAL,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.  1:14-CV-324-WKW<br>[WO] |

## ORDER

Before the court is Defendant's Motion to Reconsider Class Certification
Order.  (Doc. # 81.)  In its motion, Defendant Triad of Alabama ("Flowers" or the
"Hospital") makes three arguments in support of denying certification to the nascent
class: first, that a typo in the court's certification order compels reconsideration;
second, that the breach-of-contract subclasses will create administrative and
evidentiary headaches; and third, that the implied-contract theory is just strict
liability by another name.  Upon careful consideration, and having the benefit of
well-reasoned briefs from both parties, the court finds that the motion is due to be
denied.

Each of Defendant's three arguments will be addressed in turn. First, on page eighteen of the certification order, the court referred to Kamarian Millender's first month of employment with the Hospital as June 2012 rather than June 2013. (Doc. # 78 at 18.) Flowers jumps on this error and claims that (to paraphrase the old proverb) for want of a keystroke, the opinion was lost.[1] But this is not so. The misstated date is clearly a typo, as evidenced by the earlier reference to Millender's actual start date of June 2013. (Doc. # 78 at 4.) Moreover, the inferences that Flowers complains about only make sense when drawn from the intended-to-be-typed date of June 2013. (Doc. # 78 at 18 (explaining that Millender's start date came after April 15, 2013, the deadline to file returns for tax year 2012).) And, despite the Hospital's protests, these inferences remain sound: Even though he did not start at Flowers until after tax day, Millender could have filed for and received fraudulent returns using the identities of patients who requested extensions or otherwise filed late returns. The typo, while unfortunate, is no basis to reconsider certification.

Second, Flowers points to the "administrative and evidentiary issues" that supposedly inhere in the breach-of-contract subclasses. (Doc. # 81 at 2.) This argument works along two tracks: that administrative issues would make the class

---

[1] *Cf.* Benjamin Franklin, *Poor Richard's Almanack* 22 (The U.S.C. Publishing Co. 1914) (1732) ("For want of a nail the shoe was lost . . . ."), which itself has been used as a reference to the horseshoe on King Richard III's horse, lost during the Battle of Bosworth Field in 1485.

unmanageable, *see* Fed. R. Civ. P. 23(b)(3)(D), and that individualized evidentiary issues defeat predominance, *see* Fed. R. Civ. P. 23(b)(3).

Addressing the evidentiary argument first, the court stands by its conclusion that Plaintiffs have satisfied the predominance prong of subsection (b)(3). Flowers pushes on the varied relationships between the Hospital and the class members, arguing that a finding of liability hinges on individualized aspects of those relationships. The certification opinion addressed the minor nature of these individual issues, which "orbit around" the common questions of contractual formation and breach. (Doc. # 78 at 41, 30–35, 38–42); *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1239 (11th Cir. 2016) (explaining that predominance is not a matter of "counting noses"). Flowers fails to identify any individualized factual issues that cannot be resolved along with causation and damages in the second phase of this case. Its arguments therefore do not affect the conclusion that Plaintiffs have established 23(b)(3) predominance.

Manageability is no harder to decide. Before certifying a 23(b)(3) class, the court must determine that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* In making this determination, Rule 23 directs courts to consider "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D). This is a relative consideration. *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1358 (11th Cir. 2009). The inquiry

is not "whether this class action will create significant management problems," but rather "whether it will create relatively more management problems than any of the alternatives" to class resolution. *Id.* (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1273 (11th Cir. 2004)). Although manageability sits first chair in the superiority analysis, "[t]here exists a strong presumption against denying class certification for management reasons." *Buford v. H&R Block, Inc.*, 168 F.R.D. 340, 363 (S.D. Ga. 1996); *see also In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001) (Sotomayor, J.) ("[F]ailure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and 'should be the exception rather than the rule.'") (citation omitted). And because predominance of common issues makes class resolution more desirable, a court "would be hard pressed to conclude that a class action is less manageable than individual actions" after finding predominance. *Williams*, 568 F.3d at 1358 (quoting *Klay*, 382 F.3d at 1273).

This is not the rare case where manageability concerns bar certification. For one, the court has already found that common issues predominate, and it follows from this conclusion that "a class action will likely be more manageable than and superior to individual actions." *Id.* And, maybe more importantly, it cannot be forgotten that manageability is but a factor to be considered in evaluating the superiority prong of subsection (b)(3). This is likely a "negative value" case, where

the costs of prosecuting individual cases would exceed the expected recovery. *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996). As such, "[a] class action is not only superior to other forms of litigation; it is the only form of litigation." William B. Rubenstein, *Newberg on Class Actions* § 4:87 (5th ed. 2017). Flowers's second argument, therefore, does not compel decertification.

Third, Flowers argues that a finding of liability under Plaintiffs' implied-contract theory would effectively and unjustifiably impose strict liability on the Hospital. This goes to the merits of Plaintiffs' claims and will not impact the common or individualized character of the evidence presented; accordingly, it is not properly before the court at the certification stage. *See Brown*, 817 F.3d at 1234 (forbidding consideration of the merits beyond the extent to which "they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied") (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013)).

Beyond decertification, Flowers's motion asks for other sundry administrative relief. First, it asks that the class definition be tweaked to embrace those individuals whose information "may have been stolen" rather than whose information "was stolen." (Doc. # 81 at 1 n.1.) Plaintiffs have suggested a middle ground: adding the "may have been stolen" language to the preexisting definition, so that the class is

composed of those individuals whose information "was stolen or may have been stolen." (Doc. # 92 at 5 n.4.) The class will be redefined as suggested.

Flowers also requests that a proof of claims form be included with the class notice or that, alternatively, Plaintiffs foot the bill for the Hospital to sort the class members into the express- and implied-contract subclasses. These requests will be dealt with in a separate order, along with the parties' proposed class notice and notice plan. (*See* Docs. # 93, 94.)

Accordingly, it is ORDERED as follows:

1. Defendant's motion for reconsideration (Doc. # 81) is DENIED in part and GRANTED in part;

2. The motion is DENIED insofar as it seeks decertification of the class;

3. The motion is GRANTED insofar as it seeks redefinition of the class; and

4. The class is REDEFINED as follows:

All non-hospital patients of Flowers Hospital, as defined on page four of the certification order, whose personal identifying information or protected health information was stolen or may have been stolen from Flowers Hospital by Kamarian Millender and/or his accomplice(s). Excluded from the class are the (i) owners, officers, directors, employees, agents and/or representatives of Defendant and its parent entities, subsidiaries, affiliates, successors, and/or assigns, and (ii) the court, court personnel, and members of their immediate families.

DONE this 31st day of August, 2017.

_____/s/ W. Keith Watkins_____
CHIEF UNITED STATES DISTRICT JUDGE